## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| DYLAN HINDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-CV-03080 |
| | ) |
| SHIVA 3, INC., a franchisee | ) |
| of DUNKIN' DONUTS, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Plaintiff Dylan Hinders' Motion for Default Judgment (d/e 46) and Motion for Attorneys' Fees and Costs (d/e 50). Plaintiff has shown with that he is entitled to the full relief he has requested. Therefore, Plaintiff's Motion for Default Judgment (d/e 46) is GRANTED, as is Plaintiff's Motion for Attorneys' Fees and Costs (d/e 50). All other pending motions are DENIED as MOOT.

### I.    BACKGROUND

Plaintiff Dylan Hinders is an individual residing in Jacksonville, Illinois. Id. at p. 1. While he can read and write well and communicate via American Sign Language, he is deaf and thus

is a person with a disability within the meaning of the Americans with Disabilities Act. See 42 U.S.C. § 12102; Am. Compl. pp. 1–2. Defendant Shiva 3, Inc. ("Shiva") is a franchisee of Dunkin' Donuts and operates a Dunkin' Donuts restaurant in Jacksonville, Illinois. Am. Compl. at p. 2.

On May 31, 2019, Plaintiff filed an Amended Complaint against Defendant alleging one count of violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et. seq., and one count of intentional infliction of emotional distress. Am. Compl. pp. 3–7. In his Amended Complaint, Plaintiff alleges the following facts.

On January 5, 2019, Plaintiff attempted to use the drive-through window of Defendant's Dunkin' Donuts restaurant. Id. at p. 2. However, when he arrived, Plaintiff could not place his order using the ordering microphone system and there was no signage or instructions for deaf customers on how to order at the drive-through window. Id. After using written notes to communicate with a worker at the cashier's window, Plaintiff was eventually told that, unlike other customers, he would need to go inside the store to place his order and could not use the drive-through window in

the future.  Id. at pp. 2–3.   This instruction was twice repeated by the restaurant's manager.  Id.

During the exchange at the cashier's window, an employee of the restaurant called the Jacksonville Police Department to report the situation.  Id. at p. 2.  Police officers arrived and helped facilitate communications between the restaurant's manager and Plaintiff.  Id. at pp. 2–3.  While interacting with the police and throughout the exchange, Plaintiff felt "nervous that he was going to be arrested . . . embarrassed and humiliated" and "suffered fright, humiliation, severe emotional anguish and distress."  Id. at pp. 2–3, 6–7.

After Plaintiff filed his Amended Complaint, Defendant was initially represented by counsel.  However, on December 17, 2020, and after Defendant counsel withdrew from the case, Magistrate Judge Shanzle-Haskins entered an Order to Show Cause as to why an Order of Default should not be entered against Defendant for failing to retain counsel as required by Scandia Down Corporation v. Euroquilt, Inc.  772 F.2d 1423, 1427 (7th Cir. 1985) (requiring corporations, such as Defendant, to be represented by counsel to appear in federal court).  On January 8, 2021, Defendant neither

appeared at the hearing on the Order to Show Cause nor provided a reason for its failure to appear. As a result, Judge Shanzle-Haskins entered an Order of Default against Defendant the same day. Plaintiff then filed the present Motion for Default Judgment on January 22, 2021.

On February 11, 2022, the Court held a hearing on the Motion for Default Judgment. While Plaintiff and his attorney appeared by video, no one made ay appearance for Defendant. Plaintiff and his witness, Cory Axelrod, testified with the assistance of an interpreter trained in American Sign Language. Plaintiff testified in support of the compensatory damages Plaintiff requested in the Complaint. While the Court set post-hearing briefing due within 30-days, Plaintiff has not filed any additional items as of the filing of this order.

## II.   LEGAL STANDARD

Plaintiff Dylan Hinders has moved for an entry of default judgment pursuant to Federal Rule of Civil Procedure 55. Whether a default judgment should be entered is left to the discretion of the district court. Duling v. Markun, 231 F.2d 833, 836 (7th Cir. 1956). "There are two stages in a default proceeding: the

establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." VLM Food Trading Int'l, Inc. v. Illinois Trading Co., 811 F.3d 247, 255 (7th Cir. 2016) (quoting In re Catt, 368 F.3d 789, 793 (7th Cir. 2004)).

When considering a motion for default judgment, the Court accepts as true the well-pleaded facts set forth in the complaint. Dundee Cement, 722 F.2d at 1323); Green v. Westfield Insurance Co., 963 F.3d 619, 625 (7th Cir. 2020) (extending the well-pleaded-complaint standard to amended complaints). An entry of default means that the facts within the complaint can no longer be contested. Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994). While the factual allegations regarding liability are taken as true, those regarding damages are not. Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012). A plaintiff seeking default judgment must still establish entitlement to the relief requested. In re Catt, 368 F.3d at 793. Once the plaintiff has done so, the Court must determine with reasonable certainty the appropriate award of damages. Id. Only if "the amount claimed is liquidated or capable of ascertainment from

definite figures contained in the documentary evidence or in detailed affidavits," the Court may enter default judgment without a hearing on damages.  e360 Insight v. Spamhause Project, 500 F.3d 594, 602 (7th Cir. 2007).

Lastly, "[a] default judgment must not differ in kind, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The requested relief in this case is:

> a. A preliminary injunction and a permanent injunction, prohibiting Defendant from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA;
> b. A declaration that Defendant is operating in a manner which discriminates against deaf individuals and which fails to provide access for persons who are deaf as required by law;
> c. An award of attorneys' fees and costs;
> d. An award of compensatory monetary damages; and
> e. Such other relief as the Court deems just.

Am. Compl. (d/e 10) at 5 & 7.

### III.  ANALYSIS

**A.  Count One: the Americans with Disabilities Act**

Plaintiff's Amended Complaint first alleges Defendant violated Plaintiff's rights under the Americans with Disabilities Act.  As an establishment serving food and drink, Defendant is private entity considered to be a public accommodation, and thus a covered entity

subject to the provisions of the ADA.  42 U.S.C. § 12181(7)(B).  The ADA bans discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  Id. at § 12182(a).  The ADA further provides that such discrimination includes both (a) the denying on the basis of disability individual participation in or benefit from goods, facilities, or accommodations of covered entities, as well as (2) providing separate or different goods, facilities, or accommodations to individuals on the basis of a disability.  Id. at §§ 12182(b)(1)(A)(i)–(iii).  Finally, the ADA also extends its ban on discrimination on the basis of disability to the imposition of any criteria which screens out or tends to screen out individuals with disabilities from fully and equally enjoying any goods, facilities, or accommodations of a covered entity, as well as failing to make reasonable policy or procedure modifications to afford such equal treatment.  Id. at §§ 12182(b)(2)(A)(i)–(ii).

  Here, Defendant's employees told Plaintiff that he was not allowed to use the same drive-through window as other customers who were not deaf.  In doing so, Defendant denied Plaintiff the "full

and equal enjoyment of" its facilities.  Id. at § 12182(a).  In denying Plaintiff the ability to use the drive-through window because of his disability, Defendant discriminated against Plaintiff within the meaning of §§ 12182(b)(1)(A)(i)–(iii) and (b)(2)(A)(i)–(ii) of the ADA.  Therefore, Plaintiff's Motion for Default Judgment is GRANTED as to his ADA claim.

### a. Declaratory Relief

Plaintiff is entitled to declaratory relief as to Count One.  First, the Court has jurisdiction to issue a declaratory judgment in its discretion under the Declaratory Judgment Act because an actual controversy exists as a result of Defendant's ongoing violations of the ADA.  28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration"); see Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 747 (7th Cir. 1987) (collecting cases).

Second, the policy factors governing declaratory judgments weigh in favor of granting Plaintiff's requested relief.  "The purposes of declaratory judgments are to "clarify[ ] and settl[e] the legal

relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Tempco Elec. Heater Corp., 819 F.2d at 749 (internal citations omitted). In exercising its discretion while considering whether to issue a declaratory judgment, "a federal court must consider the public interest and the plaintiff's need for the requested relief." Int'l Harvester Co. v. Deere & Co., 623 F.2d 1207, 1218 (7th Cir. 1980). Because Defendant continues to violate the public accommodation provisions of the ADA, which plainly contradicts the public interest and constitutes continuing harm, a declaratory judgment here is appropriate to remedy the violations and allow Plaintiff to proceed to injunctive relief. (Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074–1075 (7th Cir. 2013) (holding that a plaintiff has standing to seek declaratory and injunctive relief where violations of the ADA are ongoing).

Therefore, Plaintiff's Motion for Default Judgment is GRANTED with respect to Plaintiff's request for declaratory relief.

**b. Injunctive Relief**

Plaintiff is also entitled to injunctive relief as to Count One. Every order granting an injunction must "(A) state the reasons why

it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d).  Here, Plaintiff's request for an injunction is granted for the reasons below, and the terms of the injunction follow.

The ADA provides, "[w]here appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."  42 U.S.C. § 12188(a)(2).  A party is entitled to injunctive relief where (1) it has suffered an irreparable injury, (2) remedies at law are insufficient to compensate for the injury, (3) the balance of hardships between the parties weighs in favor of granting a remedy in equity, and (4) the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Plaintiff's request for an injunction meets these four factors.  First, Plaintiff has suffered an irreparable injury for which there are no other remedies available.  The ADA limits the available remedies upon a violation to injunctive remedies.  See 42 U.S.C. §§ 12188(a)(2) & 2000a-3 (limiting remedies under the ADA to

equitable remedies).  Where a statute limits remedies to injunctive relief, "[t]he proven harm is, by definition, irreparable absent an injunction."  LAJIM, LLC v. Gen. Elec. Co., 917 F.3d 933, 944 (7th Cir. 2019).  As such, Plaintiff's harm suffered from Defendant's violations of the ADA is irreparable.

Second, the balance of hardships weighs in favor of granting an injunction because, while Plaintiff and other people similarly situated would continue to suffer absent the injunction, Defendant would only incur the costs of bringing its facilities into compliance with federal anti-discrimination law—something required of all businesses with public accommodations under the ADA.  As a result, and lastly, the public interest would be served through an injunction mandating such compliance.  See PGA Tour, Inc. v. Martin, 532 U.S. 661 675 (2001) ("Congress concluded that there was a compelling need for a clear and comprehensive national mandate to eliminate discrimination" on the basis of ability. (internal citation and quotation omitted)).  Because Plaintiff's claim under the ADA meets the above four factors, injunctive relief is warranted.

Therefore, Plaintiff's Motion for Default Judgment is GRANTED with respect to Plaintiff's request for injunctive relief and the terms are listed below.

## B.   Count Two: Intentional Infliction of Emotional Distress

To state a claim for the intentional infliction of emotional distress ("IIED"), a plaintiff must allege that (1) the conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress.  Schweihs v. Chase Home Fin., LLC, 77 N.E.3d 50, 63 (Ill. 2016)).  Liability for IIED attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.  "[T]o qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." Feltmeier v. Feltmeier, 798 N.E.2d 75, 83 (Ill. 2003).  The emotional distress must rise to the severity of which no reasonable person could endure—over and above indignities or

annoyances. Public Fin. Corp. v. Davis, 360 N.E.2d 765, 767 (Ill. 1976); see also Kleidon v. Rizza Chevrolet, Inc., 527 N.E.2d 374, 377 (Ill. App. Ct. 1988) ("Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable.")

Here, Plaintiff testified at the hearing on February 11, 2022 as to his experience when he visited the Jacksonville Dunkin Donuts. Plaintiff first testified to the fact that employees at the Dunkin Donuts were mocking him while he attempted to place his order, and a video substantiating the same was admitted into evidence. Plaintiff also testified to the fact that the police were called without his knowledge and that Plaintiff was surprised and frightened he would be arrested when the police arrived. Plaintiff lastly testified that he was humiliated and embarrassed by the ordeal. All of this testimony establishes that Plaintiff is entitled to the relief he seeks for intentional infliction of emotional distress. While Plaintiff did not admit any medical bills or other testimony to corroborate his own, the Court finds Plaintiff's own testimony credible, especially in light of the admitted video of the Dunkin employees' actions.

Accordingly, Plaintiff's Motion for Default Judgment is GRANTED as to his claim IIED claim.  See <u>Tullis v. Townley Eng'g & Mfg. Co., Inc.</u>, 243 F.3d 1058 (7th Cir. 2001) (emotional damages may be established by the testimony of the plaintiff alone and do not necessarily require further support from medical records); <u>Busche v. Burkee</u>, 649 F.2d 509, 519 n. 12 (7th Cir. 1983) (lack of medical testimony and records does not defeat a claim of emotional injuries).  Accordingly, the Court finds that Plaintiff has proven his claim for $20,000 in compensatory damages as to his claim of Intentional Infliction of Emotional Distress.  Plaintiff's Motion for Default Judgment is GRANTED with respect to Plaintiff's requested relief of $20,000 in compensatory damages.

### a. Attorneys' Fees, Costs, and Expenses

Plaintiff is entitled to his attorneys' fees, costs, and expenses.  Under the ADA, the Court may, in its discretion, "allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205.  When considering an award of attorneys' fees, costs, and expenses at default judgment, the Court must determine with reasonable certainty the proper amount of damages through either

an evidentiary hearing or "definite figures contained in the documentary evidence or in detailed affidavits." Dundee Cement Co., 722 F.2d at 1323 (citations omitted). A hearing is unnecessary where the plaintiff has substantiated the amounts stated in the documentary evidence and affidavits attached to the motion for default judgment. See Id.

Here, Plaintiff lists the sum of requested attorney's fees, costs, and expenses in detailed exhibits and affidavits. See Mot. for Entry of Judgment by Default (d/e 47) at 11; Ex. D at 43; and Ex. E at 5. In them, Plaintiff requests a total of $41,564.23—$40,000.00 in attorneys' fees, $476.73 in costs, and $1,087.50 in expenses. Id. at 11. Plaintiff states that while actual attorneys' fees amount to $51,018.75—a rate of $375 per hour—his counsel has "exercised reasonable billing judgment to arrive at" the $40,000.00 figure. Id. at n.1. In any event, the Court finds that this amount is reasonable and in line with rates that have been approved in the Central District of Illinois. See, e.g., Donaldson v. MBR Cent. Illinois Pizza, LLC, No. 18-CV-3048, 2019 WL 4447969, at *3 (C.D. Ill. Sept. 17, 2019) (approving hourly rates ranging from $250 to $400); Abellan v. HRDS Le Roy IL, LLC, Case No. 16-1037, 2018 WL 6247260, at

\*10 (C.D. Ill. Nov. 29, 2018) (approving award of fees at similar rates).

Therefore, Plaintiff's Motion for Default Judgment is GRANTED with respect to Plaintiff's request for attorneys' fees, costs, and expenses in the amount of $51,018.75.  Plaintiff's Motion for Attorneys' Fees (d/e 50) is GRANTED for the same reasons.

### IV.   CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Entry of Default Judgment (d/e 46) and Plaintiff's Motion for Attorneys' Fees (d/e 50) are each GRANTED.  The Court hereby awards Default Judgment for Plaintiff Dylan Hinders and against Defendant Shiva 3, Inc. and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them.

It is hereby ORDERED, ADJUDGED, and DECREED that:

1. Defendant Shiva 3, Inc. is operating in a manner which discriminates against deaf individuals and which fails to provide access for persons who are deaf in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182, et. seq.;

2. Defendant Siva 3, Inc. must, within 90 days, implement policies and procedures regarding the steps an employee shall take to ensure that a deaf or hard of hearing drive-through customer places and receives his or her order in a timely manner, one that does not significantly impact other customers in line;

3. Defendant Siva 3, Inc. must, within 90 days, implement policies and procedures regarding the steps an employee shall take to communicate with a deaf or hard of hearing drive-through customer, including but not limited to providing visual displays, pen and paper, and use of a waiting space;

4. Defendant Siva 3, Inc. must, within 14 days, install signage on or within the immediate proximity of the intercom system in the drive-through lane advising deaf and hard of hearing customers to pull up to the drive-through register to receive service;

5. Defendant Shiva 3, Inc. must otherwise modify and/or replace its facilities as necessary to conform with the requirements of the ADA;

6. Defendant Shiva 3, Inc. is ordered to pay Plaintiff Dylan Hinders $20,000 in compensatory damages; and

7. Plaintiff Dylan Hinders is awarded attorneys' fees, costs, and expenses totaling $51,018.75.

The Clerk is DIRECTED to issue a judgment reflective of this Order.  All other pending motions are DENIED as MOOT.  This case is closed.

**IT IS SO ORDERED.**
**ENTERED: March 14, 2022.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**